1  Eric J. Benink, Esq., SBN 187434
   eric@kkbs-law.com
2  KRAUSE KALFAYAN BENINK & SLAVENS, LLP
3  550 West C Street, Suite 530
   San Diego, CA 92101
4  P 619.232.0331 | F 619.232.4019

5  Lynell D. Davis, Esq., SBN 271152
   lynell@perfect10.com
6  Natalie Locke, Esq., SBN 261363
7  natalie@perfect10.com
   PERFECT 10, INC.
8  11803 Norfield Court
   Los Angeles, CA 90077
9  P 310.476.0794 | F 310.476.8138

10 Attorneys for Plaintiff Perfect 10, Inc.

11  UNITED STATES DISTRICT COURT

12  CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PERFECT 10, INC., a California corporation,<br><br>Plaintiff,<br><br>v.<br><br>LEO RADVINSKY, an individual; CYBERTANIA, INC., an Illinois corporation; and DOES 1 through 10, inclusive,<br><br>Defendants. | CASE NO.  2:13-cv-07279-SVW (Ex)<br><br>**DISCOVERY MATTER**<br>***Before Hon. Charles F. Eick***<br><br>**PLAINTIFF PERFECT 10, INC.'S:**<br><br>**(1) PLEADING RECOUNTING RESULTS OF MEET AND CONFER PURSUANT TO COURT ORDER (DKT. NO. 29); AND**<br><br>**(2) REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO COMPEL FURTHER RESPONSES TO PLAINTIFF PERFECT 10, INC.'S FIRST SET OF INTERROGATORIES AND FIRST SET OF REQUESTS FOR THE PRODUCTION OF DOCUMENTS TO DEFENDANTS LEO RADVINSKY AND CYBERTANIA, INC.**<br><br>Date:        March 14, 2014<br>Time:       9:30 a.m.<br>Courtroom:  20, 3rd Floor |

## **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................. 1

II. THE PARTIES' "MEET AND CONFER" TELECONFERENCE ............... 3

III. THE MISTAKEN ASSERTIONS ADVANCED BY
DEFENDANTS IN THEIR OPPOSITION PROVIDE
NO BASIS TO DENY THE MOTION ........................................................... 5

    A. Specific Interrogatories At Issue in the Motion ..................................... 5

    B. Specific Requests for Production of Documents
       At Issue in the Motion ........................................................................... 10

IV. CONCLUSION ................................................................................................. 13

Plaintiff Perfect 10, Inc. ("Perfect 10") submits this pleading in response to this Court's Order, dated March 7, 2014 (Dkt. No. 29). The Court's Order: (i) required counsel for the parties to meet and confer telephonically, on or before March 10, 2014, concerning the issues raised by Perfect 10's Motion to Compel Further Responses to Perfect 10's First Set of Interrogatories and First Set of Requests for the Production of Documents (Dkt. No. 23-1) (the "Motion"); and (ii) ordered Perfect 10 to "file a document recounting the results of the meet and confer" on or before noon on March 11, 2014.

This pleading discusses the results of the "meet and confer," which took place at 11;00 a.m. on March 10, 2014. In addition, this pleading constitutes Perfect 10's reply memorandum in support of the Motion, which addresses the various mistaken assertions raised by Defendants Leo Radvinsky ("Radvinsky") and Cybertania, Inc. ("Cybertania") (collectively, "Defendants") in their opposition to the Motion (Dkt. No. 28) (the "Opposition").

As discussed in Section II, below, the "meet and confer" telephone conference was unable to resolve the various disputes raised by the Motion. Rather, Defendants refused to provide Perfect 10 with further responses to interrogatories or additional documents, unless and until Perfect 10 either narrowed the scope of its discovery requests or provided Defendants with additional information regarding its claims. As discussed in Section III, below, Defendants' fundamental misunderstanding of the nature and scope of Perfect 10's claims against them in this action pervades Defendants' Opposition and explains why Defendants' incorrect objections to the discovery sought by Perfect 10 provide no basis to deny the Motion.

I. **INTRODUCTION**

Defendants' position, as expressed both in the Opposition and during the parties' "meet and confer" teleconference, misapprehends both the nature and scope of Perfect 10's claims. Defendants incorrectly assert that Perfect 10's "discovery

requests are entirely overbroad seeking confidential and proprietary information wholly unrelated to the allegedly infringing conduct, the time period of the alleged infringements, or the websites containing allegedly infringing content." Opposition at 1:24-27. Moreover, Defendants wrongly contend that "[t]he primary source of Plaintiff's allegations concerns the sales of [adult] videos by third parties" that use the term "Perfect 10." Opposition at 2:24-26.[1]

Defendants' assertion ignores the dual nature of Perfect 10's claims. Perfect 10 does not allege merely that Defendants have sold adult videos that infringe upon Perfect 10's incontestable registered mark for adult videos, such as "Perfect 10," "Perfect Ten," and "Perfect 10's." Rather, Perfect 10 also alleges that Defendants have unlawfully used both Perfect 10's trademarks, and thousands of Perfect 10's copyrighted images, to drive traffic to Defendants' websites. Thus, for example, Paragraph 21 of Perfect 10's Complaint (Dkt No. 1) alleges that Defendants "intentionally use[] the trademark or term 'Perfect 10'" so that "links to pages on the Radvinsky Websites appear in response to search engine searches on the term 'Perfect 10.'" Complaint, ¶21. Similarly, Paragraph 23 of the Complaint alleges that Defendants "place[] tens of thousands of ads next to infringing Perfect 10 copyrighted images, together with links to the Radvinsky Websites, for the purpose of using Perfect 10's copyrighted images, including the Perfect 10 Copyrighted Works, to promote the Radvinsky Websites." *Id.,* ¶23. *See also id.,* Exhibit 3 (examples of screenshots from the third-party website imagevenue.com, which include ads and links to Defendants' website, myfreecams.com). Finally, Paragraph 24 of the Complaint alleges that Defendants are "fully aware that it is illegal, and in

---

[1] This quotation is taken from Section II of the Opposition, which seeks to describe Defendants' business. The description of Defendants' business in Section II, however, is completely unsupported. Defendants have neither submitted nor cited to any evidence establishing either that they are not involved in the sale of adult videos that use Perfect 10's trademarks or that they do not use Perfect 10's trademarks and copyrighted images to drive traffic to their websites.

1 violation of the Settlement Agreement, for [Defendants] to make use of the Perfect
2 10 Marks and the Perfect 10 Copyrighted Works." *Id.,* ¶24.

3     Perfect 10 thus alleges that Defendants are improperly using Perfect 10's
4 trademarks and copyrights to attract traffic to their websites, and that such conduct
5 constitutes copyright infringement, trademark infringement, and a breach of the
6 Order filed on June 14, 2000, in *Perfect 10, Inc. v. Leo Radvinsky, et al.,* Case No.
7 CV 99-7376-RAP (Mcx). *See, e.g.,* Complaint, ¶32 ("Radvinsky has directly
8 profited from the infringement of the Perfect 10 Copyrighted Works in that such
9 infringements drive traffic to the Radvinsky Websites, which has resulted in
10 revenues to Radvinsky."). *See also id.,* ¶¶21-24, 33, 48-52, 61-63 and Exhibits 1, 3.
11 Moreover, Perfect 10 contends that Defendants are making hundreds of millions of
12 dollars each year from just one of their Radvinsky Websites, myfreecams.com [*see*
13 Motion at 4:9-11] – an assertion that Defendants do not deny.

14     As a result, the total revenues of both Radvinsky and Cybertania are at issue
15 in this case, and not merely some cherry-picked subportion of those revenues. As
16 discussed below, Defendants cannot properly object to the discovery sought by
17 Perfect 10 in connection with the Motion, because it is relevant to Perfect 10's
18 theory of liability, alleged in the Complaint and described above, that Defendants
19 are unlawfully using Perfect 10's trademarks and copyrights to attract traffic to their
20 websites. Rather, Perfect 10 is entitled to discovery regarding all of Defendants'
21 revenue and advertising expenditures, as sought in the Motion.

22 **II.  THE PARTIES' "MEET AND CONFER" TELECONFERENCE**

23     As ordered by this Court, counsel for the parties met and conferred regarding
24 the issues raised by the Motion via telephone, beginning at 11 a.m. on March 10,
25 2014. David N. Schultz participated on behalf of Perfect 10 together with Dr.
26 Norman Zada. Matthew A. Becker, John Flynn, and Jay M. Spillane participated
27 on behalf of Defendants.

28     During the course of the teleconference, Perfect 10 offered to narrow the

definition of "YOU" and "YOUR" as used in the discovery requests at issue in the Motion to Defendants Leo Radvinsky and Cybertania, Inc., any company or entity owned or controlled in whole or in part by Radvinsky, Cybertania, or any of Cybertania's officers, or any company or entity acting on behalf of Radvinsky or Cybertania. Defendants declined to provide Perfect 10 with any additional documents or interrogatory responses under this narrower definition. Rather, Defendants stated that they would supplement their responses only if Perfect 10 first provided them with additional information.

For example, Defendants stated that they would not provide Perfect 10 with their total revenues for 2011, 2012, or 2013 in response to Interrogatory No. 2. Instead, Defendants stated that, if Perfect 10 first identified other websites that have Perfect 10 copyrighted images or trademarks together with links to Defendants' websites, or if Perfect 10 first identified other websites of Defendants selling adult videos that used Perfect 10's trademarks, then Defendants would supplement their responses by providing revenues from those websites only. Defendants took similar positions regarding Interrogatory No. 4 (seeking the amount of money spent for advertising on websites for 2011, 2012, and 2013); Interrogatory No. 8 (seeking the identity of any website owners that Defendants have paid to drive traffic to any of their websites between January 1, 2010 and December 31, 2013); Requests for Production Nos. 1 and 2 (seeking documents sufficient to determine YOUR revenue and the sources of YOUR revenue for 2009, 2010, 2011, 2012, and 2013); and Request for Production Nos. 15 and 16 (seeking all communications between YOU and any advertising agency you have used for advertising on websites, between January 1, 2009 and December 31, 2013, and all contracts and other agreements between YOU and any advertising agency, covering ads promoting your websites during the same period).

Defendants refused to provide any further response to Interrogatory No. 6, asking Defendants to identify each of their employees, their titles, and explain their

responsibilities as of the end of 2013, unless Perfect 10 narrowed this interrogatory to particular categories of employees. Defendants similarly refused to provide any further response to Interrogatory No. 7, asking them to identify those persons who have performed programming services for them from 2000 to the present, unless Perfect 10 narrowed this interrogatory. Defendants took this position even after Perfect 10 explained that it was entitled to such information because the Court Order and associated Settlement Agreement that Perfect 10 has accused Defendants of violating was entered into in 2000. Finally, Defendants refused to provide Perfect 10 with any tax returns, in response Request for Production No. 3.

Each of the interrogatories and requests for production that are the subject of the Motion, and the parties' respective positions regarding them, are discussed in greater detail in Section III, below.

### III. THE MISTAKEN ASSERTIONS ADVANCED BY DEFENDANTS IN THEIR OPPOSITION PROVIDE NO BASIS TO DENY THE MOTION

As explained below, Defendants' refusal to provide Perfect 10 with further discovery responses is based upon a fundamental misunderstanding of both the scope of discovery and the scope of Perfect 10's claims in this action. Moreover, Defendants' position during the "meet and confer" teleconference – that they will only supplement their responses if Perfect 10 first provides them with additional information about their websites, even though Defendants are already in possession of such information – is illogical, incorrect and turns the discovery process on its head. Defendants know which of thousands of websites they have advertised on, and which advertising agencies they have used, not Perfect 10. Perfect 10 does not even know all of the different websites that Defendants own, so it cannot possibly determine such information, even if it had the resources to search through thousands of infringing websites looking for Defendants' ads.

**A.  Specific Interrogatories At Issue in the Motion**

**Interrogatory No. 2**: Please provide YOUR total revenues for each of

the years 2011, 2012, and 2013.

Defendants do not deny that they have revenues of hundreds of millions of dollars each year from just one of their websites, myfreecams.com. *See* Motion at 4:9-11. In fact, Defendants state on that website states that: (1) "MyFreeCams.com is a huge friendly webcam community of over 10 million members;" (2) "The amount of money spent by our members is the highest in the industry;" (3) "MyFreeCams.com is one of the top 300 websites on the Internet by US traffic;" and (4) "MyFreeCams.com has over 100,000 registered models." *See* http://wiki.myfreecams.com/wiki/Becoming_a_Webcam_Model_at_MyFreeCams.

Assuming that each of the 10 million members of myfreecams.com pays $5 per month in membership fees, Defendants' revenue from this website alone is $720 million per year. Accordingly, Defendants' response to Interrogatory No. 2, stating that the total gross revenue from "myfreecams from imagevenue link" for 2013 was $4,253.76 [Opposition at 7:17-19] is completely inadequate and cannot be reconciled with the language from myfreecams.com quoted above.

For example, if 20% of the yearly $720 million revenue of myfreecams.com comes from new members, and imagevenue.com was the only advertising source, as Defendants appear to claim, then Defendants should have made approximately 20% x 720 million, or $144 million, from the imagevenue.com link, not $4,253.76. Obviously, if Defendants actually made $144 million by advertising on imagevenue.com, an infringing website that offers thousands of Perfect 10 copyrighted images, that information would be highly relevant.

As discussed in Section I, above, because Perfect 10 has alleged that Defendants are using Perfect 10 trademarks and thousands of Perfect 10 copyrighted images to improperly drive traffic to Defendants' websites, including myfreecams.com, it is Defendants' total revenue that is relevant, not some microscopic sub-part.

The relevant language of both the Lanham Act and the Copyright Act

likewise supports Perfect 10's right to discovery of Defendants' total revenue. Both statutes provide that, if Perfect 10 elects to recover damages based on "profits of the infringer," it need only establish Defendants' revenues. The Lanham Act thus provides that, in cases of trademark infringement, "[i]n assessing profits the plaintiff shall be required to prove defendant's sales only; defendant must prove all elements of cost or deduction claimed." 15 U.S.C. §1117(a)(3): Similarly, the Copyright Act provides that, "[i]n establishing the infringer's profits, the copyright owner is required to present proof only of the infringer's gross revenue, and the infringer is required to prove his or her deductible expenses and the elements of profit attributable to factors other than the copyrighted work." 15 U.S.C. §504(b). Defendants' total revenues thus are critical to the determination of damages for both trademark infringement and copyright infringement.

The case law upon which Defendants seek to rely [Opposition at 8:25-9:13] does not support a different result. On the contrary, this case law provides a further rationale for Perfect 10's right to discovery of Defendants' total revenues. Defendants contend that a copyright owner may not recover an infringer's profits if they are only remotely and speculatively attributable to infringement. Thus, according to Defendants, a copyright holder needs to establish a link between infringement and indirect profits damages. In order to attempt to establish such a link, however, a copyright owner must be entitled to obtain discovery regarding the alleged infringer's total revenues, so that it may analyze the connection between such revenues and the alleged infringement. Defendants cannot avoid the discovery sought by Perfect 10 merely by disclosing some microscopic number which Defendant claim, with no documentary support, constitutes the revenues that are linked to infringement. For this reason as well, Perfect 10 is entitled to a full and complete supplemental response to Interrogatory No. 2.

**Interrogatory No. 4**: Please list the amount of money YOU spent on advertising on websites in total, by year, for each of the years from

2011 to 2013.

Defendants have refused to provide any response whatsoever to this interrogatory. Perfect 10 has alleged, however, that Defendants have "place[d] tens of thousands of ads next to infringing Perfect 10 copyrighted images." Complaint, ¶23. Moreover, Perfect 10 believes that all of Defendants' advertising was done on websites involved in infringement. The amount of money spent by Defendants to advertise on infringing websites and the total amount of money spent by Defendants on advertising, are directly relevant both to Perfect 10's claim for contributory copyright infringement and to its claim that such conduct violates the terms of the 2000 Settlement Agreement. *See, e.g.,* Complaint, ¶34 (Defendants are liable for contributory infringement because they have provided infringers with monies needed to continue their infringement of Perfect 10 Copyrighted Works). The more money that Defendants have spent to advertise on infringing websites, the greater is Defendants' support for that continued infringement, and the more material is their contribution to that infringement. Under these circumstances, Perfect 10 is entitled to know how much money Defendants have spent for advertising, and where that money has been spent.

**Interrogatory No. 6**: IDENTIFY each of YOUR employees, their titles and explain of their responsibilities, as of the end of 2013.

Defendants' response to this interrogatory, that "Leo Radvinsky, CEO, is responsible for buying and advertising for Defendant on the internet," is incomplete and insufficient. Perfect 10 is entitled to know the names of all of Defendants' employees and their responsibilities, so as to be able to determine which of these employees may have relevant knowledge and should be deposed. This is particularly true here, where Perfect 10 has shown that Defendants are generating hundreds of millions of dollars in revenue each year. It thus is inconceivable that the only employees with knowledge relevant to this action is Mr. Radvinsky. Perfect 10 should not be forced to narrow this interrogatory by guessing as to how

to categorize the different types of employees who might be working for Defendants, particularly when such information is in Defendants' possession. Rather, Perfect 10 is entitled to a full and complete supplemental response to this interrogatory.

**Interrogatory No. 7**: IDENTIFY the PERSONS (both in-house and third parties) who have performed programming services for YOU during the year 2000 to the present.

Defendants' refusal to provide any response whatsoever to this interrogatory is unacceptable. The parties entered into the Settlement Agreement that Defendants allegedly have breached in 2000. Those persons who performed programming services for Defendants on and after 2000 are likely to have information regarding Defendants' operation, including when Defendants first infringed Perfect 10's copyrighted works and trademarks and breached the Settlement Agrement. Accordingly, Defendants should be ordered to provide a full and complete supplemental response to this interrogatory.

**Interrogatory No. 8**: IDENTIFY any website owners that YOU have paid to drive traffic to any of YOUR websites between January 1 2010 and December 31, 2013.

Perfect 10 alleges, among other things, that Defendants "ha[ve] directly profited from the infringement of the Perfect 10 Copyrighted Works in that such infringements drive traffic to the Radvinsky Websites, which has resulted in revenues to" Defendants. Complaint, ¶32. Perfect 10 further alleges that Defendants pay third-party websites such as imagevenue.com every time a user clicks on a link to the website myfreecams.com, found on that third-party website next to a full-size Perfect 10 copyrighted image that displays a Perfect 10 copyright notice, Complaint, ¶34. Under these circumstances, and given Perfect 10's allegations, Perfect 10 is entitled to the information sought by this interrogatory, so that it may determine all of the websites that have infringed Perfect 10's copyrights

that Defendants have used to drive traffic to their websites. There are thousands of websites that infringe Perfect 10's copyrights. Perfect 10 should not be forced to speculate as to the relationship, if any, between those websites and Defendants, particularly since the information sought by this interrogatory is in Defendants' possession, custody or control.

      **B.**    **Specific Requests for Production of Documents At Issue in the Motion**

**Request No. 1**: DOCUMENTS sufficient to determine YOUR revenue in each of the years 2009, 2010, 2011, 2012, and 2013.

**Request No. 2**: DOCUMENTS sufficient to determine the sources of YOUR revenues in each of the years 2009, 2010, 2011, 2012, and 2013.

Perfect 10 is entitled to the documents sought by these requests for all of the reasons discussed in Section III.A.1 above regarding Interrogatory No. 2. In particular, Perfect 10 is entitled to production of documents sufficient to determine the sources of the revenue generated by Defendants, so that it may determine which revenue sources have infringed Perfect 10's trademarks or copyrights. Furthermore, Defendants' attempt to avoid producing the documents responsive to to these requests by referring to the response to Interrogatory No. 2 is wholly inadequate. Perfect 10 is not required to "take Defendants' word for it when seeking information regading Defendants' revenues. It is particularly important that Defendants be required to produce documents here, because Defendants' claim that they received a mere $4,253.76 in myfreecams.com revenues from their imagevenue.com advertising compaign is completely inconsistent with the revenues of hundreds of millions of dollars per year that Defendants appear to claim from the myfreecams.com website. Rather, Perfect 10 is entitled to the documents sought by these requests, so that it may make independent determinations regarding Defendants' revenue and source of revenue, and not be forced to rely simply upon

what Defendants say in their interrogatory responses.

**Request No. 3**: All state and federal income tax statements YOU filed in each of the years 2009, 2010, 2011, 2012, and 2013.

Perfect 10 is entitled to production of Defendants' tax returns as sought here, because such documents are particularly relevant to confirm Defendants' representations regarding their income and revenue. Perfect 10 is entitled to these documents to help determine whether and to what extent Defendants have violated the 2000 Settlement Agreement, what profits Defendants have made as a result, and what payments Defendants have made to third parties who have infringed Perfect 10's trademarks and copyrights to drive traffic to Defendants' websites. Defendants cannot have it both ways. They cannot assert that there is no compelling need for them to produce their tax returns because the information sought by Perfect 10 may be found in their response to Interrogatory No. 2, and then fail to provide a full and complete response to that interrogatory. Accordingly, Defendants should be required to produce the tax returns sought by Perfect 10.

**Request No. 4**: All accountant's reports for the years 2009 through 2013.

It is hard to believe that Defendants have no reports prepared by accountants during the above years, when Defendants claim they have made revenues in the hundreds of millions of dollars and that they employ 100,000 web cam models, to whom Defendants claim to pay over 60% of Defendants' revenues. See http://wiki.myfreecams.com/wiki/Becoming_a_Webcam_Model_at_MyFreeCams. Defendants should be required to produce all such reports. Moreover, if no such reports exist, then Defendants' need to produce all documents responsive to Request for Production Nos. 1-3, which seek documents sufficient to identify Defendants' revenue and sources of revenue, is even stronger.

**Request No. 15**: All emails and other COMMUNICATIONS between YOU and any advertising agency you have used for

1  advertising on websites, between January 1, 2009 and December 31,
2  2013.

3  **Request No. 16**: All contracts and other agreements between YOU
4  and any advertising agency, covering ads promoting YOUR websites
5  during the period from January 1, 2009 and December 31, 2013.

6  Perfect 10 alleges that Defendants have "place[d] tens of thousands of ads
7  next to infringing Perfect 10 copyrighted images, together with links to the
8  Radvinsky Websites, for the purpose of using Perfect 10's copyrighted images,
9  including the Perfect 10 Copyrighted Works, to promote the Radvinsky Websites."
10 Complaint, ¶23.  If Defendants have used Perfect 10's trademarks and copyrighted
11 images to drive traffic to their websites, such conduct violates the 2000 Settlement
12 Agreement and may also constitute trademark and copyright infringement.  The
13 documents sought by these two requests are directly relevant to these issues.
14 Moreover, such documents may very well identify other infringing websites on
15 which Defendants have placed ads next to Perfect 10 images displaying Perfect 10
16 trademark and copyright notices.

17 Defendants have produced only nine pages of documents in response to these
18 two requests, however.  It is difficult, if not impossible, to believe that no other
19 responsive documents exist.  Perfect 10 is entitled to production of all emails and
20 other communications with any advertising agency concerning advertising on
21 websites during the period from January 1, 2009 through December 31, 2013, and
22 all contracts with any advertising agency concerning ads promoting Defendants'
23 websites during the same time period.  Such documents are relevant to such issues
24 as Defendants' knowledge of infringement, Defendants' targeting of Perfect 10
25 copyrighted works and trademarks to place ads next to, the degree to which
26 Defendants are materially contributing to the infringement of Perfect 10 images
27 offered by massive infringing websites on which Defendants advertise, and the
28 location of all of the infringement of Perfect 10's trademarks and copyrights from

which Defendants have profited. Defendants should be required to produce all such documents.

## IV. CONCLUSION

Defendants have refused to answer interrogatories and requests for production of documents, and have produced only 33 pages of documents in response to the discovery propounded by Perfect 10. Defendants' improper responses ignore the theories of liability advanced by Perfect 10 and the broad scope of discovery provided under the Federal Rules of Civil Procedure.

For all of the above reasons, and for all of the reasons set forth in its moving papers, Perfect 10 respectfully requests that the Court grant the Motion in its entirety and require Defendants to provide supplemental responses and produce documents no later than March 21, 2014, so that such responses and documents may be used in connection with any summary judgment motion Perfect 10 chooses to file on April 7, 2014, pursuant to Court Order.

Dated: March 11, 2014

Respectfully submitted,
LAW OFFICES OF DAVID N. SCHULTZ

By: *David Schultz*
David N. Schultz
Attorney for Plaintiff Perfect 10, Inc.